UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE LINDA VAN ZUTPHEN,<br><br>    Plaintiff,<br><br>    v.<br><br>MARTIN J. O'MALLEY,[1]<br><br>    Defendant. | Case No. 22-cv-04192-SI<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 36, 37 |

This is an appeal of a Social Security disability benefits decision, dating back more than a decade. This case is the third time that plaintiff Jane Linda van Zutphen has appealed her disability benefits denial to federal district court. *See Van Zutphen v. Colvin*, No. 15-cv-02429-SI (N.D. Cal. filed June 6, 2015); *Van Zutphen v. Saul*, No. 18-cv-00057-SI (N.D. Cal. filed Jan. 4, 2018). The previous two times she was represented by counsel. Ms. van Zutphen is now representing herself.

The Court has reviewed the administrative record ("AR") and the briefs that the parties have filed. *See* Dkt. Nos. 25, 36, 37, 46. Ms. van Zutphen seeks reversal of the unfavorable decision issued on April 20, 2022, by Administrative Law Judge ("ALJ") David LaBarre. She asks that the Court remand this case for reinstatement of benefits.

For the reasons stated below, under 42 U.S.C. § 405(g), the Court AFFIRMS the decision of the Commissioner of Social Security. The Court DENIES Ms. van Zutphen's motion for summary judgment and GRANTS defendant's cross-motion for summary judgment.

---

[1] In the case caption, the Court substitutes the name of Martin J. O'Malley, who is the current Commissioner of Social Security, for the name of his predecessor, Kilolo Kijakazi. *See* Fed. R. Civ. P. 25(d).

**BACKGROUND**

As explained in the Court's prior orders, Ms. van Zutphen's injury traces back to five automobile accidents and a work injury in 1993. She complained of neck, back, and leg injuries which were aggravated when her then-employer refused to decrease her work hours or workload.

On March 11, 1999, Ms. van Zutphen was found disabled as of August 26, 1994, and entitled to disability insurance benefits under Title II of the Social Security Act, due to "severe mental depression and physical pain."[2] AR 4, 114.[3] The Administrative Law Judge ("ALJ") found that plaintiff met Medical Listing 12.04 (Depressive disorder) of 20 C.F.R. Part 404, Appendix 1 to Subpart P. AR 114. Ms. van Zutphen's disability benefits continued until July 2009, when her benefits ceased due to work activity. AR 4.

On October 26, 2011, Ms. van Zutphen filed for expedited reinstatement of benefits and was awarded provisional benefits. *Id.* On March 5, 2012, the Social Security Administration ("SSA") determined that she was no longer disabled as of March 1, 2012. *Id.* Ms. van Zutphen filed for reconsideration, and on July 16, 2012, the SSA found that her disability had ceased as of October 1, 2011. *Id.* Ms. van Zutphen requested a hearing before an ALJ. On September 25, 2014, ALJ Blume issued a decision finding that Ms. van Zutphen was not disabled as of July 1, 2009. *Id.*; AR 122-134.

After the Appeals Council denied Ms. van Zutphen's request for review of the ALJ's decision, she filed suit in federal court. *Van Zutphen v. Colvin*, No. 15-cv-02429-SI (N.D. Cal. June 6, 2015). On September 26, 2016, this Court issued an order granting Ms. van Zutphen's motion for summary judgment and remanding the case for further proceedings. *Id.*, Dkt. No. 20 ("2016

---

[2] At the same time, Ms. van Zutphen applied for and was found eligible for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The SSI application is not part of the administrative record in this case, and those benefits are not the subject of this appeal.

[3] The administrative record at this point is something of a mess. The agency appears to have renumbered the exhibits and the record multiple times, so most pages have several different exhibit numbers and AR numbers. In this Order, the Court refers to the AR numbers that were assigned for the record on *this* appeal, in bold at the top of the page.

1 Order"). The Court found that the ALJ committed legal error in finding medical improvement at
2 step three of the continuing disability review because the ALJ's decision failed to compare any
3 medical evidence that pre-dated the October 30, 2006 Comparison Point Decision ("CPD")[4] with
4 current medical evidence and addressed only Ms. van Zutphen's depression when the initial
5 disability finding was based on depression and physical pain/fibromyalgia. *Id.* at 10. The Court
6 also found that the ALJ failed to give clear and convincing reasons for discrediting Ms. van
7 Zutphen's testimony. *Id.* at 12-14. The Court remanded the case to the SSA for further proceedings.

8 The Appeals Council then vacated the Commissioner's decision and remanded the case to
9 the ALJ for "the purpose of completing the record and holding a *de novo* hearing." AR 163. The
10 SSA notified Ms. van Zutphen of a hearing to be held on September 6, 2017, and invited plaintiff
11 to submit additional evidence in support of her claim. AR 487-489. Ms. Van Zutphen confirmed
12 that she would attend the hearing. AR 516. On September 6, 2017, ALJ Blume held a rehearing.
13 Ms. van Zutphen did not appear, although her non-attorney representative was present. AR 519-
14 520. (As discussed below, she explains in her motion that she could not find the right building and
15 the hearing was over by the time she arrived.) On October 16, 2017, the ALJ issued an unfavorable
16 decision, again finding that Ms. van Zutphen's disability ended as of July 1, 2009. AR 169-193
17 ("2017 ALJ Decision").

18 Ms. van Zutphen appealed again to federal court. *Van Zutphen v. Saul*, No. 18-cv-00057-SI
19 (N.D. Cal. Jan. 4, 2018). On August 19, 2019, the Court issued an order granting in part and denying
20 in part both sides' motions. *Id.*, Dkt. No. 37 ("2019 Order"). The Court found that, in the October
21 2017 decision, the ALJ "properly compared the medical evidence prior to and at the CPD with
22 medical evidence after the CPD, and the finding of medical improvement is supported by substantial
23 evidence." *Id.* at 11-12. The Court also found that, in contrast to the first ALJ decision, in this
24 decision "the ALJ provided clear and convincing reasons supported by substantial evidence for
25 rejecting plaintiff's symptom testimony." *Id.* at 17. However, the Court found that "substantial

---

[4] The Comparison Point Decision as used here is the date of "the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." *See* 20 C.F.R. § 404.1594(b)(1). The ALJ determined, and no party disputes, that the CPD in this case is October 30, 2006, the date that Ms. van Zutphen was most recently found to have a continuing disability.

evidence [did] not support the ALJ's selection of July 1, 2009, as the date of medical improvement . . . ." *Id.* at 12. The Court remanded the case "for the ALJ to reevaluate the cessation date and to support that date with citations to substantial evidence in the record." *Id.* at 13.

On February 23, 2022, ALJ LaBarre held a telephonic hearing. AR 4. Ms. van Zutphen appeared with a non-attorney representative. *Id.* Steven S. Goldstein, M.D., an impartial medical expert; David Glassmire, Ph.D., an impartial psychological expert; and Kathleen Macy-Powers, an impartial vocational expert, also appeared and testified. *Id.*; AR 45, 47. On April 20, 2022, the ALJ issued a 27-page written decision finding that Ms. van Zutphen's disability ended on October 1, 2010, and that she has not become disabled again since that date. AR 4-30.

Ms. van Zutphen appealed ALJ LaBarre's decision to federal district court. Dkt. No. 1. The case was initially assigned to Magistrate Judge Thomas Hixson. Ms. van Zutphen's motion was due in February 2023, and Judge Hixson granted numerous extensions of the deadline.[5] On July 17, 2023, Ms. van Zutphen filed her motion for summary judgment. Dkt. No. 36. Defendant filed a cross-motion for summary judgment, along with a request for a one-day extension of defendant's filing deadline and a 30-day extension of Ms. van Zutphen's reply deadline. Dkt. Nos. 37, 38. The Court granted the extension requests. Dkt. No. 42. In the meantime, Judge Hixson issued a referral to this Judge to determine whether this case was related to the previous Social Security appeals that Ms. van Zutphen filed. Dkt. No. 39. This Judge found that the cases were related under Civil Local Rule 13-2. Dkt. No. 40. This case was therefore reassigned to this Judge. The Court granted Ms. van Zutphen another extension of the reply deadline. Dkt. No. 45. Ms. van Zutphen filed her reply brief on October 31, 2023. Dkt. No. 46. This case is therefore ready for a ruling.

**LEGAL STANDARD**

**I.      Standard of Review**

The Social Security Act authorizes judicial review of final decisions made by the Commissioner. 42 U.S.C. § 405(g). A court's review of a disability determination is limited, and

---

[5] Ms. van Zutphen explains in her motion that she was displaced by a fire in her home in February 2023. She lost everything she owned, including her pets and the ashes of her mother.

a final administration decision may be altered "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). Substantial evidence is the relevant evidence in the entire record "which a reasonable person might accept as adequate to support a conclusion." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Substantial evidence consists of "more than a mere scintilla but less than a preponderance." *Young v. Sullivan*, 911 F.2d 181, 183 (9th Cir. 1990). Courts "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The substantial evidence standard is a deferential standard of review. *See Biestek v. Berryhill*, 587 U.S. ----, 139 S. Ct. 1148, 1154 (2019).

A district court may enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). A decision of the ALJ will not be reversed for errors that are harmless. *Burch*, 400 F.3d at 679 (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991)).

## II.   Continuing Disability Review

"Once a claimant has been found to be disabled, . . . a presumption of continuing disability arises in her favor." *Bellamy v. Sec'y of Health & Human Servs.*, 755 F.2d 1380, 1381 (9th Cir. 1985) (citing *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983)); *see also Medina v. Colvin*, No. 14-CV-01967-DMR, 2015 WL 5448498, at *12 (N.D. Cal. Aug. 21, 2015) (discussing the Ninth Circuit's reaffirming this presumption after 1984 amendments to the Social Security Act). The Commissioner periodically reviews whether the claimant continues to be entitled to benefits. *See* 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(a).

At continuing disability review, an ALJ conducts an eight-step inquiry:

(1) Are you engaging in substantial gainful activity? If you are (and any applicable trial work period has been completed), we will find disability to have ended (see paragraph (d)(5) of this section).

(2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart? If you do, your disability will be found to continue.

(3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section? If there has been medical improvement as shown by a decrease in medical severity, see step (4). If there has been no decrease in medical severity, there has been no medical improvement. (See step (5).)

(4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step (5). If medical improvement is related to your ability to do work, see step (6).

(5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply. If none of them apply, your disability will be found to continue. If one of the first group of exceptions to medical improvement applies, see step (6). If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.

(6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521). This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7). When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.

(7) If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 404.1560. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.

(8) If you are not able to do work you have done in the past, we will consider whether you can do other work given the residual functional capacity assessment made under paragraph (f)(7) of this section and your age, education, and past work experience (see paragraph (f)(9) of this section for an exception to this rule). If you can, we will find that your disability has ended. If you cannot, we will find that your disability continues.

(9) We may proceed to the final step, described in paragraph (f)(8) of this section, if the evidence in your file about your past relevant work is not sufficient for us to make

> a finding under paragraph (f)(7) of this section about whether you can perform your past relevant work. If we find that you can adjust to other work based solely on your age, education, and residual functional capacity, we will find that you are no longer disabled, and we will not make a finding about whether you can do your past relevant work under paragraph (f)(7) of this section. If we find that you may be unable to adjust to other work or if § 404.1562 may apply, we will assess your claim under paragraph (f)(7) of this section and make a finding about whether you can perform your past relevant work.

20 C.F.R. § 404.1594(f).

## ALJ DECISION

Following the rehearing directed by this Court, ALJ LaBarre applied the eight-step analysis described in 20 C.F.R. § 404.1594 regarding plaintiff's continuing disability status.

At step one, the ALJ determined that Ms. van Zutphen engaged in substantial gainful activity as a ticket seller at games for the San Francisco Giants and Oakland A's through 2019. AR 8-9. The ALJ found that Ms. van Zutphen has the medically determinable impairments of supraventricular tachycardia ("SVT") and depressive disorder not otherwise specified since October 1, 2010. AR 11.

At step two, the ALJ determined that since October 1, 2010, Ms. van Zutphen has not had an impairment or combination of impairments that meets or medically equals a Listing. AR 14. The ALJ examined the criteria for Listing 4.05 (recurrent arrhythmias), Listing 3.02 (chronic respiratory disorders), and Listing 12.04 (depressive disorders).

At step three, the ALJ found that medical improvement occurred as of October 1, 2010. AR 18. The ALJ incorporated the analysis contained in the prior ALJ decision and in the Court's 2019 Order comparing the medical evidence at the CPD with the medical evidence after the CPD. *Id.*

At step four, the ALJ found Ms. van Zutphen's "medical improvement is related to the ability to work because, by October 1, 2010, the claimant's CPD impairments(s) [sic] no longer met or medically equaled the same listing(s) that was met at the time of the CPD (20 CFR 404.1594(c)(3)(i))."[6] AR 20. Because of this finding at step four, the ALJ skipped step five and

---

[6] 20 C.F.R. § 404.1594(c)(3)(i) states that, for claimants previously determined to be disabled because they met a Listing, where "medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to

7

proceeded to step six. *See* 20 C.F.R. § 404.1594(f)(4).

At step six, the ALJ found, in contrast to the previous decision, that plaintiff has continued to have a severe impairment of SVT since October 1, 2010. *See* AR 20; *see also* AR 189 (2017 ALJ Decision finding that Ms. van Zutphen did not have a severe impairment as of July 1, 2009).

At step seven, again in contrast to the prior ALJ decision, the ALJ found that: "Based on the impairments present since October 1, 2010, the claimant has had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that she must avoid hazards such as unprotected heights and moving and dangerous machinery." AR 20; *see also* AR 189 (2017 ALJ Decision finding that as of July 1, 2009, Ms. van Zutphen had the residual functional capacity to perform a full range of work at *all* exertional levels). ALJ LaBarre went on to find that since October 1, 2010, the claimant has been able to perform her past relevant work as a ticket seller. AR 28.

Although this step-seven finding could have ended the analysis, resulting in a finding that plaintiff's disability had ended, *see* 20 C.F.R. § 404.1594(f)(7), the ALJ moved to the next step and discussed whether Ms. van Zutphen was also able to do other work given her residual functional capacity and her age, education, and past work experience. The ALJ found that, considering Ms. van Zutphen's age, education, work experience, and residual functional capacity based on the impairments present since October 1, 2010, Ms. van Zutphen has been able to perform a significant number of jobs in the national economy and therefore her disability ended on October 1, 2010. AR 29-30. The ALJ found that Ms. van Zutphen has not become disabled again since that date. AR 30.

## DISCUSSION

In her motion, Ms. Van Zutphen argues that she continues to be disabled and that her disability has never ended. In response, defendant argues that the Court should uphold ALJ LaBarre's decision because the decision is supported by substantial evidence in the record and it is not the Court's role to substitute its own judgment for the ALJ's.

Ms. van Zutphen makes a number of arguments in support of her motion. The Court will

---

work."

8

address these arguments now.

1.	Ms. van Zutphen argues that the Commissioner can't seem to determine an appropriate cessation date for her disability. She correctly notes that the Commissioner has come up with three different cessation dates in her case: March 1, 2012 (after Ms. van Zutphen applied for reinstatement of benefits); July 1, 2009 (in ALJ Blume's 2014 and 2017 decisions); and October 1, 2010 (in ALJ LaBarre's decision—the decision currently being challenged). Ms. van Zutphen's frustration is understandable, since she would have received a more favorable decision if she had not challenged the Commissioner's determination after she first applied for reinstatement.

However, the Court's role now is solely to review the most recent decision by ALJ LaBarre. As will be explained further throughout this Order, the Court finds that ALJ LaBarre's April 2022 decision is supported by substantial evidence and is free from legal error. Moreover, ALJ LaBarre explained that October 1, 2010, is the earliest date that Ms. van Zutphen could have been found eligible for benefits, given that she applied for expedited reinstatement of benefits in October 2011. *See* AR 5 (citing 20 C.F.R. § 404.1592f(a)). The Social Security regulations state that when a claimant is eligible for reinstatement, the SSA will reinstate the benefits "with the earliest month, in the 12-month period that ends with the month before you filed your request for instatement," if the claimant meets all the requirements for reinstatement. 20 C.F.R. § 404.1592f(a). This explains why ALJ LaBarre's decision does not discuss a possible cessation date any earlier than October 1, 2010. The Court finds no legal error in this calculation. The multiple cessation dates in the record, while frustrating, do not create a reason in this case to overturn ALJ LaBarre's decision.

2.	Ms. van Zutphen argues that she was and is disabled because she was never able to work a full-time 8-hour job, and her work was done on a seasonal basis. At Step 1 of the continuing disability review, ALJ LaBarre found that Ms. van Zutphen engaged in substantial gainful activity through 2019 because of her work as a ticket seller. AR 8-11. Because of this finding, Ms. van Zutphen would not have been eligible for disability benefits at any time between October 2010 and December 2019. *See* 20 C.F.R. § 404.1571 ("If you are able to engage in substantial gainful activity,

9

1    we will find that you are not disabled."). It is important to note, therefore, that ALJ LaBarre's entire
2    decision after Step 1 was just about whether Ms. van Zutphen was disabled <u>in 2020 or later</u>, since
3    her substantial gainful activity through 2019 meant that she was not disabled under the Social
4    Security rules.

5    Ms. van Zutphen does not argue that the dollar figures from her earnings that ALJ LaBarre
6    used were incorrect. (The Court has gone back to the record to confirm that the dollar figures the
7    ALJ used are accurate, and they are. *See* AR 711, 765.) Instead, she argues that this was seasonal
8    work that she did not perform full-time. But under the SSA rules, "substantial gainful activity" can
9    occur even if the claimant is not working full-time. The regulations state that "work may be
10   substantial even if it is done on a part-time basis . . . ." 20 C.F.R. § 404.1572(a). Social Security
11   Ruling 83-35, which was published in 1983, explains that the SSA has eliminated the concept of
12   "seasonal" work, meaning that the SSA no longer averages earnings from seasonal work over the
13   entire year when calculating whether work is "substantial." SSR 83-35, 1983 WL 31257, at *1.
14   The SSA changed the rules because they found the seasonal work averaging was unfairly
15   advantaging seasonal workers over other workers. *Id.* Instead, in a situation like Ms. van Zutphen's,
16   where someone is working for a certain period of time, the SSA will average the earnings over that
17   period of time, not over an entire year. ALJ LaBarre did just that and calculated that Ms. van
18   Zutphen's average monthly earnings during the baseball season (through 2019) were higher than
19   the monthly limits set by the SSA.[7] AR 8-11. The fact that Ms. van Zutphen worked on a seasonal
20   basis and not full-time does not support overturning the ALJ's decision at Step 1, where the ALJ
21   properly applied the current SSA rules and correctly calculated the averages.

22

23   3.    Ms. van Zutphen argues, "There is not medical evidence showing that my disabilities
24   changed." Motion at 4. The Court already addressed this in its 2019 Order, when reviewing ALJ

---

[7] The ALJ assumed a nine-month period of work during the baseball season. AR 10. Ms. van Zutphen does not challenge that as inaccurate, and it appears this may have been a generous calculation on the ALJ's part. The SSA Field Office calculated Ms. van Zutphen's ticket selling work in 2011 as occurring over a six-month period. *See* AR 9.

10

Blume's 2017 decision. The 2019 Order states: "The Court finds that by comparing the medical records before and after the [October 2006] CPD and by evaluating plaintiff's physical and mental conditions, the ALJ has corrected the legal error committed at step three in the previous decision.[footnote] The ALJ properly compared the medical evidence prior to and at the CPD with the medical evidence after the CPD, and the finding of medical improvement is supported by substantial evidence." 2019 Order at 11-12. ALJ LaBarre incorporated this portion of ALJ Blume's 2017 decision into the 2022 decision. AR 18. For the same reasons as stated in the 2019 Order, the Court finds that there is no error in the ALJ's finding of medical improvement. *See* 2019 Order at 9-12.

4. Ms. van Zutphen argues that there is a gap in her medical records because when her disability benefits were discontinued, the SSA cut off her Medicare and she was no longer able to get continuous treatment from Kaiser. Motion at 4. At the hearing, she testified to the disruption in her healthcare and discussed the new doctors she is seeing and the challenges she's faced because they don't have her complete files. AR 89-91. Ms. van Zutphen does not identify precisely when this gap in treatment occurred, and the ALJ's decision does not identify any specific gap in the records. Ms. van Zutphen had the opportunity, through her representative, to submit any additional medical records for consideration five days prior to the hearing but did not do so.

Social Security regulations state that "[e]ach party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence . . . no later than 5 business days before the date of the scheduled hearing. If you do not comply with this requirement, the administrative law judge may decline to consider or obtain the evidence," unless certain exceptions apply. 20 C.F.R. § 404.935. At the hearing, Ms. van Zutphen's representative did not argue that any exception applied and he admitted that he did not submit a letter within the five days. AR 6; *see also* AR 47. "Nothing . . . requires an ALJ to hold the record open after a hearing for the submission of additional records." Soc. Sec. Disab. Prac. § 3:46 (2023 ed.). Moreover, it appears that Ms. van Zutphen's representative was not seeking to submit new medical records. AR 6 (ALJ decision stating that "No new medical records were submitted or stated

11

1 to be outstanding.").

2 As ALJ LaBarre noted, there was almost no new medical information submitted for consideration at the third hearing, with the exception of a one-page document titled "Claimant's Recent Medical Treatment" that appears to have been received by the SSA on October 4, 2021.[8] AR 1004 (Ex. B32E). The ALJ reviewed and considered this document at multiple steps of the review. AR 12, 23, 25. As the ALJ noted, the document lacks details such as month or year of the reported hospitalization and is not accompanied by any of the underlying treatment records. AR 12, 25. The ALJ concluded, "As it stands, this evidence indicates at most the continuation of the pattern of intermittent, sporadic treatment noted in the prior decision that is not in line with the alleged severity of the claimant's symptoms." AR 25. The Court finds the ALJ's reasoning supported by substantial evidence in the record and will not overturn the decision based on any missing medical records, especially because Ms. van Zutphen has not identified what those records are. The administrative record at this point is more than 1500 pages, and it contains Ms. van Zutphen's records from her treatment at Kaiser as well as the updated statement of recent treatment that Ms. van Zutphen submitted in October 2021. To the extent that there are additional records that could have been added, Ms. van Zutphen and her representative had the opportunity to do so and did not.

5. Ms. van Zutphen argues that ALJ Blume committed error at the September 6, 2017 remand hearing because the hearing "was not considered a hearing if it was determined to last 1 minute in proceedings and now allowing the adequate time for reconsideration in an unbiased fashion without the Plaintiff being present." Motion at 4. The transcript from that hearing shows the hearing began at 8:33 a.m. and ended at 8:34 a.m. AR 519-520. Ms. van Zutphen was not present, but her representative was. *Id.* She states in her papers that she was not present because she could not find the right building and the hearing was over when she arrived. Motion at 3.

The Court does not find this to be a reason to reverse ALJ LaBarre's decision. It is unfortunate that the second hearing took place without Ms. van Zutphen, but it was within the ALJ's

---

[8] Ms. van Zutphen also attached the business cards for two of the doctors. AR 1005-1006.

12

right to proceed since Ms. van Zutphen's representative was present. *See* HALLEX § I-2-4-25-D.2 ("the ALJ may determine that the claimant has constructively waived the right to appear at the hearing if the representative is unable to locate the claimant"). Additionally, Ms. van Zutphen had the opportunity to testify at the third hearing before Judge LaBarre and she did testify at length.

6. Finally, Ms. van Zutphen challenges ALJ LaBarre's findings at Step 8. She argues that ALJ LaBarre did not apply the "Grid Rules" and that if he had applied them he would have had to find she was disabled. She also argues that "ALJ LaBarre relies too much on the Vocational Expert's opinion that I could perform certain jobs such as Dining Room Attendant, Kitchen Helper, or Industrial Cleaner when there is absolutely no evidence in the record that I could perform any of these jobs given my disabilities." Motion at 5.

However, ALJ LaBarre did not need to reach Step 8, as his finding at Step 7 meant that Ms. van Zutphen was not disabled. The ALJ found that, since October 1, 2010, Ms. van Zutphen had the residual functional capacity ("RFC") to perform medium work, except that she must avoid hazards such as unprotected heights and moving and dangerous machinery.[9] AR 20. In making this finding, the ALJ gave "little weight" to the opinion of Dr. Rana, who did a consultative examination in February 2012 and found Ms. van Zutphen was limited to light work. AR 25. The ALJ also assigned little weight to several other doctors (Drs. Morgan, Pancho, and Goldstein) who found Ms. van Zutphen limited to light work because those doctors relied largely on Dr. Rana's opinion. AR 26. In the 2019 Order, this Court already considered and rejected Ms. van Zutphen's challenge to the weight given to Dr. Rana's opinion.[10] 2019 Order at 14-15. For the same reasons as stated in the 2019 Order, the Court finds no error in the weight ALJ LaBarre assigned to Dr. Rana's opinion. Overall, ALJ LaBarre's RFC finding is extremely thorough and supported by substantial evidence

---

[9] This is more restrictive than the prior ALJ decision. In 2017, ALJ Blume found Ms. van Zutphen was capable of "a full range of work at all exertional levels" but that she should not be exposed to unprotected heights or to hazards such as moving machinery. AR 189.

[10] Like ALJ LaBarre, ALJ Blume assigned "little weight" to Dr. Rana's opinion. *See* AR 192.

in the record.

Using this RFC finding the ALJ found at Step 7 that since October 1, 2010, Ms. van Zutphen has been able to perform her past relevant work as a ticket seller. AR 28. This ends the continuing disability review. At Step 7, the SSA regulations state, "If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 404.1560. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended." 20 C.F.R. § 404.1594(f)(7).

At the third ALJ hearing, in February 2022, the vocational expert ("VE") testified that an individual of Ms. van Zutphen's age, education, and work experience who is able to perform medium exertion work activity, but who must avoid hazards such as unprotected heights and moving and dangerous machinery, could perform their past relevant work as a ticket seller.[11] AR 77. The SSA regulations state, "We may use the services of vocational experts . . . to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). The ALJ was entitled to rely on the VE's testimony in making his decision at Step 7.

---

[11] The VE also testified that such an individual could perform their past relevant work as a ticket seller even if the individual was limited to *light* exertion work. AR 79. In other words, even if the ALJ had accepted the opinions of Dr. Rana and the other doctors who said Ms. van Zutphen was limited to light work, the result would have been the same: she still would have been found to be able to perform her past relevant work at Step 7.

1   Additionally, the ALJ did not misapply the Grids. In her reply brief, Ms. van Zutphen cites Grid rule 202.04. Reply at 6. That rule applies to claimants of advanced age who are limited to *light* work. As discussed above, the ALJ found Ms. van Zutphen limited to *medium* work, with the limitation of avoiding hazards. The Grid rules for a claimant limited to medium work, of Ms. van Zutphen's age, education, and work experience, would lead to a finding of "not disabled." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 203.14, 203.21. The Court finds no error in the ALJ's decision.

7. To summarize, the Court has reviewed the record, including the prior ALJ decisions and hearing transcripts, as well as the parties' briefs, including the timeline of events contained in Ms. van Zutphen's reply brief. In her papers, Ms. van Zutphen describes the stress caused by her physical and mental ailments, alongside the challenges of being a single parent to four children and managing her Social Security appeals. It is clear that these have been stressful and difficult years. However, this Court's role is not to re-decide this case from the start. This Court's role is limited to reviewing the record and deciding whether the ALJ's decision is free from legal error and supported by substantial evidence. In other words, the Court must give deference to the ALJ's decision. *Biestek*, 139 S. Ct. at 1154. As already stated earlier in this Order, the Court finds that ALJ LaBarre's April 2022 decision is thorough and well reasoned, and that his finding that Ms. van Zutphen is not disabled under Title II of the Social Security Act is supported by substantial evidence in the record and is not based on legal error. For that reason, the Court affirms the decision of the Commissioner. *See Garrison*, 759 F.3d at 1012 ("An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'").

## CONCLUSION

For the reasons stated above and for good cause shown, the Court AFFIRMS the decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). The Court DENIES Ms. van Zutphen's motion for summary judgment (Dkt. No. 36) and GRANTS defendant's cross-motion for

summary judgment (Dkt. No. 37).

**IT IS SO ORDERED**.

Dated: March 22, 2024

_____
SUSAN ILLSTON
United States District Judge